# EXHIBIT A

# Bergdoll v. City of York

United States District Court, M.D. Pennsylvania. |    May 12, 2009 |    Not Reported in F.Supp.2d |    2009 WL 1351015

2009 WL 1351015
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Charlotte BERGDOLL, Plaintiff,

v.

The CITY OF YORK, et al., Defendants.

Civil Action No. 1:08–CV–01879.

|

May 12, 2009.

**Attorneys and Law Firms**

John G. Bergdoll, III, Law Offices of Attorney John G. Bergdoll, Esq., John G. Bergdoll, IV, J.G. Bergdoll, Attorney at Law, York, PA, for Plaintiff.

Donald B. Hoyt, Assistant City Solicitor, York, PA, for Defendants.

### *MEMORANDUM ORDER*

A. RICHARD CAPUTO, District Judge.

 **\*1** Presently before the Court are Plaintiff's Motion for Reconsideration (Doc. 22) and First Motion to Amend/Correct Complaint (Doc. 26). The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

The Court detailed the relevant factual background in this case in its January 5, 2009 Memorandum and Order (Doc. 21, at 1–3) and need not restate that background information here. The procedural history relevant to Plaintiff's two (2) current motions is as follows:

In October 2008, the Court received two (2) motions to dismiss Plaintiff's Complaint: one from Defendants County of York and District Attorney H. Stanley Rebert (Doc. 9), and one from Defendants The City of York, Mayor John S. Brenner, Police Commissioner Mark Whitman, and Police Captain Wesley Kahley (Doc. 13). Defendant Police Officer A. Baez did not participate in either motion to dismiss and filed his Answer to Plaintiff's Complaint (Doc. 12) on October 29, 2008. After receiving and reviewing briefs from the parties, the Court granted both motions to dismiss in its January 5, 2008 Memorandum and Order and dismissed

Defendants County of York, Stanley Rebert, the City of York, the Honorable John S. Brenner, Mark L. Whitman, and Wesley Kahley from this case. (Doc. 21.)

Plaintiff filed her current Motion for Reconsideration (Doc. 22) on January 15, 2009, and provided a corresponding Brief in Support (Doc. 23) on January 30, 2009. On February 2, 2009, Plaintiff filed her First Motion to Amend/Correct. (Doc. 24.) On February 3, 2009, the Court denied Plaintiff's First Motion to Amend/Correct, without prejudice, for failure to follow Local Rule 15.1. (Doc. 25.) On February 4, 2009, Plaintiff also refiled her First Motion to Amend/Correct, appropriately providing the marked-up copy of the proposed Amended Complaint as required by the Local Rules. (Doc. 26 .) Plaintiff also submitted a Brief in Support (Doc. 29) of her motion to amend on February 23, 2009. On February 13, 2009, Defendants The County of York and H. Stanley Rebert filed a brief opposing both of Plaintiff's motions. (Doc. 27.) On February 17, 2009, Defendants The City of York, John S. Brenner, Mark L. Whitman, and Wesley Kahley filed their Brief in Opposition (Doc. 28) to Plaintiff's Motion for Reconsideration and, on March 10, 2009, these same Defendants filed their Brief in Opposition (Doc. 30) to Plaintiff's First Motion to Amend/Correct. The Court, accordingly, finds that the current motions have been thoroughly briefed and are now ripe for disposition.

Middle District of Pennsylvania Local Rule 7.10 states:

> Any motion for reconsideration or reargument *must be accompanied by a supporting brief* and filed within ten (10) days after the entry of the judgment, order or decree concerned. The time constraints and assumptions set forth in Local Rules 7.6 and 7.7 shall apply to briefs in opposition to motions for reconsideration and reply briefs.

M.D. Pa. LR 7.10 (emphasis added). Plaintiff filed the current Motion for Reconsideration on January 15, 2009, but did not file the corresponding Brief in Support until January 30, 2009. Accordingly, the Court finds that the Plaintiff has failed to comply with Local Rule 7.10 and will deny Plaintiff's Motion for Reconsideration without prejudice.

Case 4:20-cv-00298-MWB   Document 17-1   Filed 04/24/20   Page 4 of 26

**\*2**  Middle District of Pennsylvania Local Rule 7.5 states:

> Within ten (10) days after the filing of any motion filed prior to trial, the party filing the same shall file a brief in support of the motion. If the motion seeks a protective order, a supporting brief shall be filed with the motion. Unless otherwise ordered by the court, if supporting legal briefs are not filed within the time provided in this rule such motion shall be deemed to be withdrawn. Briefs shall not be required: (a) In support of a motion for enlargement of time if the reasons for the request are fully stated in the motion, (b) In support of any motion or a stipulation which has concurrence of all parties, and the reasons for the motion or the stipulation and the relief sought are fully stated therein, or (c) In support of a motion for appointment of counsel.

M.D. Pa. LR 7.5. Plaintiff's current Motion to Amend/Correct Complaint (Doc. 26) was filed on February 4, 2009. Thus, pursuant to Local Rule 7.5, Plaintiff was required to file her brief supporting this motion on or before February 19, 2009. [1] Plaintiff's Brief in Support (Doc. 23), however, was not filed until February 23, 2009. As Plaintiff's Motion to Amend/Correct Complaint was not filed within the ten (10) day period

provided by Local Rule 7.5, the Court considers Plaintiff's motion to be withdrawn and will deny it without prejudice.

[1]  Federal Rule of Civil Procedure 6(a) provides that:
> (a) Computing Time. The following rules apply in computing any time period specified in these rule or in any local rule, court order, or statute.
> (1) Day of the Event Excluded. Exclude the day of the act, event, or default that begins the period.
> (2) Exclusions from Brief Periods. Exclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days.
> (3) Last Day. Include the last day of the period unless it is a Saturday, Sunday, legal holiday, or—if the act to be done is filing a paper in court—a day on which weather or other conditions make the clerk's office inaccessible. When the last day is excluded, the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day when the clerk's office is inaccessible.
>
> In computing the appropriate ten (10) day period in accordance with Rule 6(a), the Court has accounted for Saturdays, Sundays, and the February 16, 2009 Presidents Day legal holiday.

For the reasons stated, NOW this *12th* day of May, 2009, in view of the failure of Plaintiff Charlotte Bergdoll to follow Local Rules 7.5 and 7.10, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 22) and Motion to Amend/Correct Complaint (Doc. 26) are **DENIED,** without prejudice.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1351015

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# Hagerman v. Anadarko E & P Co., LP

United States District Court, M.D. Pennsylvania. |      November 15, 2012 |      Not Reported in F.Supp.2d |
2012 WL 6138479

2012 WL 6138479
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Linda M. HAGERMAN, and Howard R. Hagerman,
a/k/a Bill Hagerman, wife and husband, Plaintiffs

v.

ANADARKO E & P CO., LP, Jim
Bourbeau Land Service, LLC, and David
K. Shipe, a/k/a Dave Shipe, Defendants.

Civil Action No. 4:CV–12–0919.
|
Nov. 15, 2012.

**Attorneys and Law Firms**

Taunya M. Rosenbloom, Law Office of Taunya Knolles
Rosenbloom, Athens, PA, for Plaintiffs

John A. Snyder, Katherine M. Allen, McQuaide Blasko Law
Offices, State College, PA, Keith M. Pemrick, Dale Woodard
Gent Law Firm, Franklin, PA, J. David Smith, McCormick
Law Firm, Ronald C. Travis, Rieders Travis, Williamsport,
PA, for Defendants.

**REPORT AND RECOMMENDATION**

THOMAS M. BLEWITT, United States Magistrate Judge.

**I. Background.**

 *1 The above action was filed on May 16, 2012, by
Plaintiffs Linda M. Hagerman and Howard R. Hagerman,
through counsel. (Doc. 1). Plaintiffs attached Exhibits to
their Complaint, Exs. A–F.[1] Defendants are Anadarko E
& P Co., LP "Anadarko," Jim Bourbeau Land Service,
LLC ("Bourbeau"), and David K. Shipe. In their Complaint,
Plaintiffs raise eleven (11) Counts and basically allege that
Defendants filed a fraudulent oil and gas lease with respect
to their 233.67 acre property located in Cascade Township,
Lycoming County, Pennsylvania. In particular, Plaintiffs
allege that Plaintiff Linda Hagerman did sign an oil and gas
lease with Defendant Anadarko on May 27, 2006, but that the
lease Defendant Anadarko filed with the Lycoming County,
Pennsylvania, Recorder of Deeds was fraudulent and not the
lease they signed.

[1]     The Court can consider Plaintiffs' Exhibits submitted
with their Complaint for present purposes. *See Pension
Benefit Guarantee Corp. v. White Consol. Indus.,* 998
F.2d 1192, 1196 (3d Cir.1993).

Jurisdiction of this Court is alleged to be based upon diversity
of citizenship under 28 U.S.C. § 1332(a). As this is a case
based upon diversity jurisdiction of this Court, 28 U.S.C. §
1332, we apply Pennsylvania law. *See Moore v. Kulicke &
Soffa Industries, Inc.,* 318 F.3d 561, 563 (3d Cir.2003).

Plaintiffs served Defendants with their Complaint. On
September 4, 2012, Defendant Bourbeau filed its Answer
to Plaintiffs' Complaint with Affirmative Defenses. (Doc.
15). Also, on September 4, 2012, Defendant Anadarko
filed a Motion for Partial Dismissal of Plaintiffs' Complaint
pursuant to Fed.R.Civ.P. 12(b)(6), arguing that Plaintiffs'
claim in Count V of their Complaint alleging that Defendant
Anadarko violated the Pennsylvania Unfair Trade Practices
and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–
1, et seq., failed to state a claim. (**Doc.16**). On September
18, 2012, Defendant Anadarko filed its brief in support of
its Motion for Partial Dismissal with attachments. (Doc.
17). On October 2, 2012, Plaintiffs filed their opposition
brief to Defendant Anadarko's Motion for Partial Dismissal.
(Doc. 21). Defendant Anadarko filed its reply brief with an
attachment on October 16, 2012.[2] (Doc. 23).

[2]     Defendant Anadarko's attachments to its briefs are copies
of unpublished opinions on which it relies.

After being granted an extension of time, on October
10, 2012, Defendant Shipe filed his Answer to Plaintiffs'
Complaint with Affirmative Defenses and Cross Claims
against Defendants Anadarko and Bourbeau. (Doc. 22).
Defendants Anadarko and Bourbeau both requested and were
granted extensions of time until November 14, 2012, to file
their Answers to Defendant Shipe's Cross Claims against
them. (Docs. 26 & 27).

Defendant Anadarko's Motion is ripe for disposition.[3]

[3]     The undersigned has been assigned this case for pre-trial
matters.

**II. Allegations of Count V of the Complaint.**

In Count V of their Complaint, Plaintiffs aver that
Defendants[4] committed various unfair, deceptive and
unconscionable acts and practices in violation of the

UTPCPL, 73 P.S. § 201–2(4), regarding the oil and gas lease Linda Hagerman signed on May 27, 2006, with respect to their 233.67 acre property located in Cascade Township, Lycoming County, Pennsylvania. Plaintiffs allege that Defendants made false misrepresentations regarding the material terms of their oil and gas lease agreement and, that Defendants falsified the lease agreement by attaching the signature page Plaintiff Linda Hagerman signed to a new and materially different lease document. (Doc. 1, pp. 24–29). Specifically, Plaintiffs aver that "Defendants unilaterally and without Plaintiffs' consent altered Plaintiffs' lease from a five (5) year primary term with a right of first refusal to a renew at negotiated competitive commercial terms, to a five (5) year primary term with an option to renew the lease for an additional five (5) years at the same per acre lease rate contracted for in 2006." (Id., p. 26, ¶ 151). Plaintiffs aver that the original per acre lease rate in 2006 for their parcel was $19,861.95 and that the per acre lease rate at the time the original, unaltered lease expired on May 12, 2011, was believed to be between $584,175.00 and $1,343,602.50 for their parcel. (Id., p. 27, ¶ 153). Further, Plaintiffs allege that Defendant Anadarko intentional recorded the falsified lease with the Lycoming County Recorder of Deeds as if it were the original oil and gas lease actually signed by Linda Hagerman. (Id., p. 27, ¶ 154). Plaintiffs state that they justifiably relied upon the misrepresentations of Defendants regrading ther terms of their lease. (Id., p. 28, ¶ 163).

4      We construe Plaintiffs as referring to all three (3) Defendants in Count V.

*2  Additionally, Plaintiffs allege that Defendant Anadarko refused to record a Release of the falsified lease it recorded with the Lycoming County Recorder of Deeds to clear title to Plaintiffs' title to their 233.67 acre property located in Cascade Township even though Anadarko knew that the lease it recorded was materially altered without Plaintiffs' knowledge and consent. (Id., p. 27, ¶ 155–156). Plaintiffs also allege that a representative of Defendant Anadarko made deceptive and fraudulent statements regarding the poor quality of Plaintiffs' property for oil and gas development and production in order to convince Plaintiffs to accept a lease acreage price below fair market value. Moreover, Plaintiffs aver that the fraudulent and deceptive conduct of Defendants created the appearance that their 233.67 acre property located in Cascade Township was encumbered by a valid lease which deterred third party oil and gas leasing companies from negotiating with them. (Id., p. 28, ¶ 's 158–162).

As relief in Count V, Plaintiffs seek compensatory and punitive damages against Defendants. (Id., p. 29).

**III. Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County,* 712 F.Supp.2d 332, 343–344 (M.D.Pa.2010), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,* 129 S .Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234–35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210–11.

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

**\*3** The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09–1104, 2009 WL 3041992, at \*2 (3d Cir. Sept.24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

## IV. Discussion.

As stated, Defendant Anadarko has moved to dismiss Count V of Plaintiffs' Complaint, which as detailed above, alleges that Defendants [5] violated the UTPCPL. We thus must address the issue of whether the Plaintiffs' Count V under the Pennsylvania UTPCPL states a claim for which relief can be granted. In its Motion to Dismiss, Defendant Anadarko argues, in part, that Count V of Plaintiffs' Complaint fails to state a cause of action and that this Count should be dismissed under Fed.R.Civ.P. 12(b)(6) since Plaintiffs failed to allege that Linda Hagerman signed the oil and gas lease "primarily for personal, family or household purposes" as required for a private action under the UTPCPL, 73 P.S. § 201–9.2(a).

[5] While Plaintiffs repeatedly refer to "Defendants" in Count V, they only specifically mention Defendant Anadarko in this count.

"In 1976, 73 P.S. § 201–9.2 was added ... to expressly provide parties victimized by practices prohibited thereby with a private cause of action against those who victimized them." *In re Barker,* 251 F.R. 250, 261 (E.D.Pa.2000) (citation omitted). Further, "73 P.S. § 201–9.2(a) is often the only section that specifically provides a private cause of action to aggrieved consumers ...." *Id.* The UTPCPL allows a private action to be filed under 73 P.S. § 201–9.2(a) by "[a]ny person who purchases or leases goods or services **primarily for personal, family or household purposes** and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act of practice declared unlawful by section 3 of this act [§ 201–3], may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater." (emphasis added). The UTPCPL does not define "purchaser" or "household purpose." *See Balderston v. Medtronic Sofamor Danek, Inc.,* 285 F.3d 238, 241 (3d Cir.2002). The UTPCPL "unambiguously permits only persons who have purchased or leased goods or services to sue." *Id.* (citation omitted). The UTPCPL "protects consumers of goods and services from unfair or deceptive

trade practices or acts." *Smith v. Commercial Banking Corp.,* 866 F.2d 576, 581 (3d Cir.1989). The UTPCPL attempts to put sellers and consumers on a level playing field. *Id* . the UTPCPL is to be liberally construed. *Keller v. Volkswagen of America, Inc.,* 733 A.2d 642, 646 (Pa.Super.1999). Plaintiffs can also seek treble damages, attorney fees and costs under 73 P.S. § 201–9.2(a).

An individual must establish the following elements to raise a private action under the UTPCPL: "1) that he or she is a purchaser or lessee; 2) that the transaction is dealing with 'goods or services'; 3) that the good or service was primarily for personal, family, or household purposes; and 4) that he or she suffered damages arising from the purchase or lease of goods or services." *Keller v. Volkswagen of America, Inc.,* 733 A.2d at 646 (citing 73 P.S. § 201–9.2).

**\*4** Thus, "[t]he UTPCPL prohibits '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce....' " 73 P.S. § 201–3." *Portis v. River House Assoc., L.P.,* 498 F.Supp2d 746, 751 (M.D.Pa.2007). The *Portis* Court stated that "the UTPCPL clearly permits private actors to bring suit only when they purchase or lease goods or services[ ]" primarily for personal, family or household purposes and, that "it is well-established that the UTPCPL applies to residential leases...." *Id.* at 752(citation omitted). Additionally, "[t]he UTPCPL is designed to protect the public from fraud and deceptive business practices." *Novinger Group, Inc. v. Hartford Ins., Inc.,* 514 F.Supp.2d 662, 670 (M.D.Pa.2007) (citations omitted). "Whether a purchase is for personal, family or household purposes depends on the *'purpose* of the purchase, not the *type of product purchased.' " Id.* (citation omitted) (emphasis in original). If a Plaintiff fails to allege that he purchased or leased goods or services for "personal, family or household purposes," he lacks standing to raise a cause of action under the UTPCPL. *Id.* (citations omitted).

In the present case, we agree with Defendant Anadarko that in Count V, Plaintiffs have failed to allege that Linda Hagerman signed the oil and gas lease with it "primarily for personal, family or household purposes." Plaintiffs state that their allegations are sufficient in Count V, when read in the context of their entire Complaint, to state a claim under the UTPCPL since they aver that Linda Hagerman signed an oil and gas lease with Defendant Anadarko with respect to their 233.67 acre property, which had a cabin on it, and since it is clear from their pleading that Linda signed the lease in her individual capacity. Plaintiffs cite to three paragraphs

in their Complaint to support their contention, namely, ¶ 's 11, 16 and 44. We concur with Defendant Anadarko that "[n]one of these allegations address why Ms. Hagerman signed the lease or whether she entered into the lease for any particular purpose." (Doc. 23, p. 5). Also, as Defendant Anadarko correctly point out (*Id.*, p. 6), simply because Linda Hagerman signed the oil and gas lease in her individual capacity does not indicate what the primary purpose of the lease was and whether it was a business investment or a consumer transaction. Further, we agree with Defendant Anadarko (Doc. 23, pp. 7–10) that Plaintiffs' Complaint does not sufficiently state the other required elements of a private action under the UTPCPL as delineated by the Court in *Keller v. Volkswagen of America, Inc.,* 733 A.2d at 646.

Thus, we find that Plaintiffs have not satisfied the threshold element required to bring a private action under the UTPCPL since they failed to allege facts that the oil and gas lease was "primarily for personal, family or household purposes." As such, we shall recommend that Defendant Anadarko's Motion to Dismiss Count V of Plaintiffs' Complaint be granted and that this Count be dismissed without prejudice.[6] Based on the above discussion, we do not find at this time that it would be futile for Plaintiffs to seek leave of court to file an Amended Complaint with respect to their UTPCPL claim in Count V. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1982); *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir.2004).

Clearly, § 201–9.2 was drafted to provide a private right of action to a circumscribed class of consumers injured by unlawful or deceptive trade practices, relying on actions by the attorney general to remedy practices affecting other members of the public-at-large, including potential consumers. *See Lauer,* 1989 W 206448 at * 2.

However, since we find that Plaintiffs have failed to satisfy the first requirement to assert a private action under the UTPCPL, we do not address herein these two other stated issues raised by Defendant Anadarko. We recognize that if Plaintiffs file a motion for leave of court to file an amended pleading with respect to Count V, these issues may be reasserted as to whether any amendment of their UTPCPL claim would be futile. Nonetheless, at this time, Plaintiffs have not filed a proper motion for leave of court to file an amended pleading with respect to Count V.

**\*5** We agree with Defendant Anadarko (Doc. 23, pp. 3–4) that while Plaintiffs simply request (Doc. 21, p. 14) the court to allow them to amend their Complaint with respect to their UTPCPL claim if it determines that they failed to state sufficient facts, Plaintiffs must file a motion for leave of court to amend their Count V. We find that Plaintiffs' ability to amend their original Complaint with respect to Count V once as a matter or course sans a motion, lapsed since it is now well more than 21 days after Defendant Anadarko filed its Rule 12(b)(6) Motion to Dismiss. (Doc. 16). At this posture of the case, Plaintiffs cannot simply file an Amended Complaint without seeking leave of court to do so.

Since Plaintiffs seek to file an Amended Complaint more than 21 days after Defendant Anadarko's Motion to Dismiss, we find that Plaintiffs must file a Motion for Leave to file an Amended Complaint, together with their proposed Amended Complaint and a support brief. *See Rule 15(a) of the Federal Rules of Civil Procedure* and Local Rule 15.1, M.D. Pa.; *see also* Rule 15(a)(1) (B).[7]

---

[6]    Defendant Anadarko also argues that Plaintiffs' UTPCPL claim should be dismissed since they failed to allege facts showing that Linda Hagerman signed a lease for "goods and services" and that Plaintiffs do not have standing to bring a private action under the UTPCPL since Ms. Hagerman was not a purchaser or lessee. The parties concur that there is no controlling cases regarding the issue of whether an oil and gas lease is a lease for "goods or services" for purposes of § 201–9.2(a) of the UTPCPL. Also, Defendant Anadarko states that Plaintiffs are not purchasers or consumers of goods or services. Defendant Anadarko states that Plaintiffs have not cited to any case in which the court found that § 201–9.2 permits a claim by a lessor on a lease contract.

       We note that in *Wise v. American General Life Ins. Co.,* 2005 WL 670697, \*7 (E.D.Pa.), the Court indicated that a private right of action under the UTPCPL was limited, and stated that:

[7]    Rule 15(a) of the Federal Rules of Civil Procedure governs amendment of pleadings and provides as follows:

       **(a) Amendments Before Trial**

       **(1)** *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

       **(A) 21 days after serving it, or**

       **(B)** if the pleading is one to which a responsive pleading is required, **21 days** after service of a responsive pleading or **21 days** after service of a **motion** under **Rule 12(b)**

**(2)** *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the **court's** leave. The **court** should freely give leave when justice so requires.

*See Santos, supra.*

Accordingly, we shall recommend that Defendant Anadarko's Motion to Dismiss Count V of Plaintiffs' Complaint (Doc. 16) be granted and that Count V be dismissed without prejudice.

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that Defendant Anadarko's Motion to Dismiss Count V of Plaintiffs' Complaint (**Doc.16**) be granted and that Count V be dismissed without prejudice. It is also recommended that this case be remanded to the undersigned for further proceedings. [8]

[8]    If our Report and Recommendation is adopted, Defendant Anadarko will be directed to file an Answer to Plaintiffs' remaining Counts in their Complaint. The case will then be set for a scheduling conference.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6138479

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

# Hazzouri v. West Pittston Borough, Luzerne County, Pennsylvania

United States District Court, M.D. Pennsylvania. |     January 15, 2019 |     Not Reported in Fed. Supp. | 2019 WL 194368

Hazzouri v. West Pittston Borough, Luzerne County,..., Not Reported in Fed....

Case 4:20-cv-00298-MWB Document 17-1 Filed 04/24/20 Page 12 of 26

2019 WL 194368

2019 WL 194368
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Richard HAZZOURI and
Kimberly Hazzouri, Plaintiffs

v.

WEST PITTSTON BOROUGH, LUZERNE
COUNTY, PENNSYLVANIA, Defendant

No. 3:18cv1982
|
Signed 01/15/2019

**Attorneys and Law Firms**

Joseph A. Quinn, Jr., Michelle M. Quinn, Lars Henry
Anderson, Hourigan, Kluger and Quinn, P.C., Kingston, PA,
for Plaintiffs.

David E. Heisler, Cipriani & Werner, P.C., Scranton, PA, for
Defendant.

**MEMORANDUM**

JAMES M. MUNLEY, JUDGE

 **\*1** Before the court are motions to dismiss both the original
and amended complaints in this due process violation case.
(Docs. 3, 7). Also before the court is plaintiffs' subsequent
motion for leave to amend their complaint. (Doc. 11). All
three motions have been fully briefed and are ripe for
disposition.

**Background**

Plaintiffs Richard Hazzouri and Kimberly Hazzouri owned
property located in West Pittston Borough, Luzerne County,
Pennsylvania, which they used as their primary residence.
(Doc. 1, Compl. ¶ 17). Plaintiffs' property was substantially
damaged in 2011 as a result of flooding caused by Hurricane
Irene and Tropical Storm Lee. (Id. ¶ 19).

Because of the county-wide damage sustained from
Hurricane Irene and Tropical Storm Lee, Luzerne County
submitted a request to the United States Department of
Housing and Urban Development for the release of a
Community Development Block Grant Disaster Recovery

to undertake a project known as the Luzerne County Flood
Disaster Project (hereinafter "Project"). (Id. ¶ 11). The Project
was created to acquire and demolish a number of properties
in participating municipalities throughout Luzerne County
in order to remove flood damaged structures. (Id. ¶ 12).
West Pittston Borough was identified as a participating
municipality for the Project. The Luzerne County Office
of Community Development (hereinafter "OCD"), which
oversaw the Project, adopted a Disaster Recovery Buyout
Operations Plan (hereinafter "Plan"). (Id. ¶ 13).

Although the plaintiffs owned property within West Pittston
Borough, the plaintiffs did not know about the Project until
August 20, 2017, when they learned of its existence through
friends. (Id. ¶ 26). Plaintiffs immediately contacted OCD, at
which time they were informed that the Project was entering
its final stage, thus the plaintiffs would have to contact West
Pittston Borough for approval to apply. (Id. ¶ 29). Upon
receiving approval, the plaintiffs filed their application for
relief under the Project on January 30, 2018. (Id. ¶ 24).

On March 6, 2018, OCD informed the plaintiffs that because
they did not apply for relief until the closing phase of the
Project, it was unlikely that they would be selected for a
buyout. (Id. ¶ 34). Plaintiffs' property was assigned to a
"waiting list." (Id. ¶ 36). In the meantime, the plaintiffs
discovered that another buyout program existed, a mitigation
grant program being administered by the Luzerne County
Flood Protection Authority (hereinafter "FPA"). (Id. ¶ 38).
The FPA advised the plaintiffs that it had received a number of
applications for participation from residents of West Pittston
Borough and that their request would also be included. (Id.
¶ 40). On April 3, 2018, however, the FPA advised the
plaintiffs that West Pittston Borough would not agree to allow
the plaintiffs to participate in the FPA Program. (Id. ¶ 43).
Consequently, the plaintiffs did not obtain a buyout. (Id. ¶ 44).

 **\*2** Based on the foregoing allegations, plaintiffs filed the
instant complaint in the Court of Common Pleas for Luzerne
County claiming denial of Procedural Due Process pursuant
to 42 U.S.C. § 1983, denial of Substantive Due Process
pursuant to 42 U.S.C. § 1983, and denial of Equal Protection
of the Law pursuant to 42 U.S.C. § 1983. This matter was
removed to this court on October 12, 2018. The parties have
since filed several motions, which we will address below.

**Jurisdiction**

Because this case is brought pursuant to 42 U.S.C. § 1983,
the court has jurisdiction pursuant to 28 U.S.C. § 1331.

Hazzouri v. West Pittston Borough, Luzerne County,..., Not Reported in Fed....

Case 4:20-cv-00298-MWB Document 17-1 Filed 04/24/20 Page 13 of 26

2019 WL 194368

("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Discussion**

As noted above, the defendant removed this action to the Middle District of Pennsylvania on October 12, 2018. On October 19, 2018, the defendant filed a motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiffs have failed to state a claim upon which relief may be granted. (Doc. 3). The defendant filed its brief in support of that motion on November 2, 2018. (Doc. 4). On November 11, 2018, in lieu of a responsive brief, the plaintiff filed an amended complaint. (Doc. 6). The defendant then moved to dismiss the plaintiffs' amended complaint, arguing that plaintiffs' amended complaint was untimely filed. (Doc. 7). Subsequently, on December 4, 2018, the plaintiffs filed a motion to amend their original complaint in the event we determine that the filing of the amended complaint was indeed untimely. (Doc. 11).

The parties agree that a plaintiff may amend the complaint once as a matter of course within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(A)(1)(B). Thereafter, a plaintiff must obtain leave of the court to amend the complaint. FED. R. CIV. P. 15(A)(2). Here, the plaintiffs, in response to the defendant's first motion to dismiss, attempted to amend their complaint 23 days after service of the defendant's motion to dismiss. Thus, we agree with the defendant that plaintiffs' amended complaint (Doc. 6) was untimely filed. We will grant the defendant's motion to dismiss the plaintiffs' amended complaint.

We now turn to the plaintiffs' motion to amend. The defendant argues that we should deny the plaintiffs' motion to amend because plaintiffs' counsel has demonstrated a "bad faith" motive for the amendment. Specifically, the defendant directs our attention to a letter written by plaintiffs' counsel to defense counsel on November 7, 2018, in which, according to the defendant, plaintiffs' counsel implies that the amended complaint is "retaliation" for the defendant challenging the original complaint with a motion to dismiss. The defendant contends that an argumentative tone permeates the letter and that the plaintiffs are trying to "weaponize[e] their litigation by bringing in additional parties ... with the motive of presumably pressuring the original Defendant into a resolution favorable to the Plaintiffs." (Doc. 15, Def.'s Br. in

Opp. to Mot. to Amend at 6). In response, the plaintiffs argue that they are within their right to add additional defendants at this very early stage in the litigation, and that the additional claims proposed in the amended complaint are simply a result of arguments raised by the defendant in its first motion to dismiss.

**\*3**  District courts are instructed to "freely give leave [to amend a complaint] when justice so requires." FED. R. CIV. P. 15(A)(2). In discussing the requirement that leave to amend be freely given, the Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). District courts are justified in denying leave to amend when the movant has unduly delayed the case, when the movant seeks leave in bad faith or with a dilatory motive, when granting leave would unduly prejudice the other parties, and when the amendment would prove futile. See Riley v. Taylor, 62 F.3d 86, 90 (3d Cir. 1995) (citing Foman, 371 U.S. at 182).

At this early stage in litigation, we agree with the plaintiffs that justice so requires that they be granted leave to amend their complaint. We have reviewed the November 7, 2018, letter and, while declining to engage in a speculative analysis as to the author's tone, view the letter as a factual layout of the steps that the plaintiffs intended to take given the filing of the defendant's motion to dismiss. We do not find that this letter suggests "bad faith" on the part of the plaintiffs simply because they wish to add additional claims and parties to the lawsuit. Further, discovery has yet to commence in this matter, and the defendant has not alleged that the proposed amendments would be futile. Thus, we will grant the plaintiffs' motion to amend. Plaintiffs will have seven (7) days to refile their amended complaint.

Finally, we will deny the defendant's motion to dismiss plaintiffs' original complaint as moot upon the filing of plaintiffs' amended complaint.

**Conclusion**

Accordingly, the defendant's motion to dismiss plaintiff's amended complaint against West Pittston Borough will be granted. Plaintiffs' motion for leave to file a new amended complaint will be granted. Defendant's motion to dismiss plaintiffs' original complaint will be denied. An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 194368

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

## Ross v. Jolly

United States District Court, E.D. Pennsylvania. |     October 22, 1993 |     151 F.R.D. 562 |     1993 WL 427348

151 F.R.D. 562
United States District Court,
E.D. Pennsylvania.

Claude ROSS, Trudy Tennant, Mabel Searles,
Linda Fleming, Walt Hallinan, Brigette Reeves,
Sandra Brown, Charles Trulear, Barbara Turner,
A. Ollie Wyatt, Cynthia Jones, Douglas Garrett,
Josephine McElveen, Sigmond Porter, Jacqueline
Watkins, Jerome Bell, Loretta Brown, Ronald
Dorsey, Ruben Jones, Alice Martin, Betty Morris,
Larry Nottage, Carl Sumner, Neil Raimo, Rudolph
Sawyer, James Warner and Dennis Willis
v.
Elton JOLLY, Grace Whitney and
Philadelphia Housing Authority.

Civ. A. No. 92–6106.
|
Oct. 22, 1993.

**Synopsis**

Housing authority employees brought action to enjoin
termination of their employment, alleging that termination
of their positions was political. On motion of defendants for
summary judgment and sanctions and of plaintiffs for leave to
amend and for discovery, the District Court, Joyner, J., held
that: (1) proposed amendment to allege race discrimination in
addition to claims of political termination of positions would
be denied as untimely and futile; (2) claims were moot; and
(3) motion for Rule 11 sanctions would be denied.

Motion for summary judgment granted and other motions
denied.

West Headnotes (15)

**[1]    Federal Civil Procedure** 🔑 **Discretion of
Court**

Decision whether to grant leave to amend
pleading rests within sound discretion of trial
court, but court's discretion is circumscribed by
liberal amendment philosophy behind applicable
rule. Fed.Rules Civ.Proc.Rule 15(a, b), 28
U.S.C.A.

**[2]    Federal Civil Procedure** 🔑 Amendments

Factors trial court may consider in deciding
motion to amend pleadings include undue delay,
undue prejudice to opposing party, and futility of
amendment. Fed.Rules Civ.Proc.Rule 15(a, b),
28 U.S.C.A.

12 Cases that cite this headnote

**[3]    Federal Civil Procedure** 🔑 **Injustice or
prejudice**

If amendment of pleadings substantially changes
theory on which case has been proceeding
and is proposed late enough that opponent
would be required to engage in significant new
preparation, court may deem it prejudicial and
deny amendment. Fed.Rules Civ.Proc.Rule 15(a,
b), 28 U.S.C.A.

3 Cases that cite this headnote

**[4]    Federal Civil Procedure** 🔑 **Form and
sufficiency of amendment; futility**

If proposed change clearly is frivolous or
advances claim or defense that is legally
insufficient on its face, court may deny leave to
amend pleading. Fed.Rules Civ.Proc.Rule 15(a,
b), 28 U.S.C.A.

14 Cases that cite this headnote

**[5]    Federal Civil Procedure** 🔑 **Time for
amendment**

**Federal Civil Procedure** 🔑 **Nature and
extent of relief sought**

Proposed amendment to complaint by
housing authority employees, to allege race
discrimination under § 1983 in addition to
their claims that terminations of their positions
were politically motivated, would be denied as
untimely and futile, where motion to amend
was filed some eight months after filing of first
amended complaint, no authority was presented
to support admission into evidence of newspaper
articles on which employees evidently relied, and

no explanation was offered why alleged race motive could not have been discovered earlier. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.; 42 U.S.C.A. § 1983.

2 Cases that cite this headnote

**[6]    Federal Civil Procedure** 🔑 **Matters considered**

Summary judgment motion requires court to look beyond bare allegations of pleadings to determine if they have sufficient factual support to warrant their consideration at trial. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[7]    Federal Civil Procedure** 🔑 **Burden of proof**

Generally, party seeking summary judgment always bears initial responsibility for informing district court of basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate absence of genuine issue of material fact, the nonmovant must then establish existence of each element of its case. Fed.Rules Civ.Proc.Rules 56, 56(c, e), 28 U.S.C.A.

**[8]    Federal Courts** 🔑 **Employment discrimination**

Suit by housing authority employees alleging political motivation in abolition of their positions was moot where each of the plaintiffs had been formally appointed to replacement positions.

**[9]    Federal Civil Procedure** 🔑 **Unwarranted, Groundless or Frivolous Papers or Claims**

Central purpose of Rule 11 sanctions is to discourage filing of pleadings, motions and other papers that are frivolous, legally unreasonable, or without factual foundation. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[10]    Federal Civil Procedure** 🔑 **Unwarranted, Groundless or Frivolous Papers or Claims**

Rule 11 does not prohibit merely intentional misconduct; inexperience, incompetence, willfulness or deliberate choice may all contribute to violation supporting sanctions. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[11]    Federal Civil Procedure** 🔑 **Grounds for Imposition**

Goal of Rule 11 sanctions is not wholesale fee shifting, but correction of litigation abuse. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[12]    Federal Civil Procedure** 🔑 **Reasonableness or bad faith in general; objective or subjective standard**

Rule 11 imposes obligation on counsel to stop, think, investigate and research before filing papers either to initiate suit or to conduct litigation, and Rule can be violated only if signing of document in question was unreasonable under the circumstances. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

2 Cases that cite this headnote

**[13]    Federal Civil Procedure** 🔑 **Reasonableness or bad faith in general; objective or subjective standard**

It is objective reasonableness of signing of document which must be evaluated in determining whether to impose Rule 11 sanctions, not the subjective intent or belief of the signer. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

1 Cases that cite this headnote

**[14]    Federal Civil Procedure** 🔑 **Mandatory duty or discretion**

If court finds that Rule 11 has been violated, imposition of sanctions is mandatory. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

Ross v. Jolly, 151 F.R.D. 562 (1993)

28 Fed.R.Serv.3d 222

[15]  **Federal Civil Procedure** 🔑 Motions and Opposition Thereto

Imposition of Rule 11 sanctions against plaintiff for signing of affidavit in support of motion for preliminary injunction was not warranted though little investigation was undertaken at the time, where fears of plaintiffs concerning loss of their jobs were real, albeit ultimately unjustified.

Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**Attorneys and Law Firms**

**\*563** Robert J. Sugarman, Sugarman & Associates, Philadelphia, PA, for plaintiffs.

James G. Sheehan, Asst. U.S. Atty. Civ. Div., David F. McComb, Asst. U.S. Atty's Office, Philadelphia, PA, for U.S., and Michael Smerconish.

Carl Oxholm, III, Hangley, Connolly, Epstein, Chicco, Foxman and Ewing, Philadelphia, PA, for Elton Jolly, Grace Whitney, and Philadelphia Housing Authority.

*MEMORANDUM AND ORDER*

JOYNER, District Judge.

This civil, equity action is once again before this Court pursuant to the motion of Defendants, Elton Jolly, Grace Whitney and the Philadelphia Housing Authority for summary judgment and for Rule 11 sanctions and the Plaintiffs' motion for leave to amend and for discovery. For the reasons which follow, the summary judgment motion is granted and the motions for sanctions and for leave to amend are denied.

I. *HISTORY OF THE CASE.*

According to the pleadings and the record in this matter, this case has its origins in late **\*564** 1991 when two separate audits conducted by the Advisory Committee to the Greater Philadelphia Chamber of Commerce and the Office of the Inspector General for HUD's regional office revealed that the Philadelphia Housing Authority was in breach of its obligations and duties under the Annual Contributions Contract which it had with the United States Department of Housing and Urban Development (HUD) and through which much of its funding was received. As a consequence of these findings, on May 20, 1992, PHA and HUD entered into an Agreement of Understanding under which PHA gave to HUD "... all power and authority to act as and for it ..." for a period of time not to exceed one year. The Agreement of Understanding further provided that HUD would appoint a Special Master to "manage and operate the housing authority in a manner consistent with HUD regulations and all federal, state and local laws." On June 22, 1992, Michael Smerconish, HUD's regional administrator, appointed Elton Jolly to the special master position.

Shortly thereafter, on August 5, 1992, Messrs. Jolly and Smerconish announced that a reorganization plan had been developed for PHA, the cornerstone of which was the creation and implementation of a merit hiring system for all PHA employees. On or about October 8, 1992, each of the plaintiffs, who had for varying lengths of time been employed by PHA as housing managers, received correspondence from Mr. Jolly informing them that, as of October 22, 1992, their housing manager positions were being abolished under the reorganization plan and that they were effectively terminated from those positions as of that date. In place of the housing manager position, PHA was creating the position of "Site Manager," which had all of the same responsibilities as did the "Housing Managers" as well as the obligation to oversee the maintenance function and to conduct regular inventories. The plaintiffs were each informed that they would automatically be appointed to the positions of Acting Site Managers for their respective housing projects and that they could apply for the permanent position of Site Manager or for any other new position at PHA by responding directly to Anthony Hughes, the new Director of Human Resources.

In response thereto, on October 22, 1992, the plaintiffs commenced this lawsuit to, *inter alia,* enjoin PHA, its Special Master, Elton Jolly and its Associate Special Master, Grace Whitney from terminating them from their employment. In their amended complaint, the plaintiffs charged that the defendants, acting in concert with Michael Smerconish, had violated the Federal Labor Management Relations Act, 5 U.S.C. § 7101, *et seq.,* the Federal Civil Service Reform Act, 5 U.S.C. § 1101, *et seq.* and the First and Fourteenth Amendments to the U.S. Constitution, had breached their employment agreements and had failed to recognize the rights of the plaintiffs to the protections afforded by the Merit Systems Protection Board as provided for at 5 U.S.C. § 1201, *et seq.* In addition, the plaintiffs essentially alleged throughout

their pleadings and motions before this court that PHA's plan of reorganization was a mere pretext to cover up an alleged scheme by the defendants to justify political firings of those PHA employees (plaintiffs included) who are not in any way affiliated with the so-called "Rizzo-crat or Rizzo–Republican" political group.

Following a full day of hearings in this matter on December 21, 1992 on the plaintiffs' motion for injunctive relief and consideration of additional evidence and memorandum by the parties, this Court issued a decision on January 21, 1993 denying the plaintiffs' motion because the plaintiffs had failed to prove any of the elements necessary to justify the grant of extraordinary injunctive relief. We likewise could find no evidence that politics had played any role in PHA's decision to terminate the plaintiffs from their housing manager positions and to appoint them to their acting site manager roles.

On December 17, 1992, Elton Jolly, Grace Whitney and the Philadelphia Housing Authority moved for the imposition of sanctions against the plaintiffs pursuant to Fed.R.Civ.P. 11 and on January 15, 1993 filed this motion for summary judgment. The plaintiffs, in turn, appealed the January 21, 1993 decision denying them injunctive relief to the Court of Appeals for the Third Circuit and, **565** on June 28, 1993 filed a motion for leave to amend and for discovery. On September 30, 1993, the Third Circuit affirmed the January 21, 1993 ruling without opinion and we therefore now turn to the three motions still pending before this court.

## II. *DISCUSSION*

A. *Standards Applicable to Motions for Leave to Amend*

[1]   [2]   [3]   [4]   Federal Rule of Civil Procedure 15(a) sets forth the general principles governing amendment of pleadings. Specifically, that Rule states:

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within

10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Similarly, under Fed.R.Civ.P. 15(b), "such amendment of the pleadings as may be necessary to cause them to conform to the evidence ... may be made upon motion of any party at any time ..." The decision whether to grant leave to amend rests within the sound discretion of the trial court, although the court's discretion is circumscribed by the liberal amendment philosophy behind the rule. *Snyder v. Baumecker,* 708 F.Supp. 1451, 1456 (D.N.J.1989); *Cahill v. Carroll,* 695 F.Supp. 836, 837 (E.D.Pa.1988). Factors the trial court may consider in deciding a motion to amend include undue delay, undue prejudice to the opposing party and futility of amendment. *Averbach v. Rival Manufacturing Co.,* 879 F.2d 1196, 1203 (3rd Cir.1989), citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). For example, if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial. Likewise, if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend. *6 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1487.*

[5]   In this case, the plaintiffs filed the instant motion to amend some eight months after the filing of their first amended complaint requesting leave to add a claim under 42 U.S.C. § 1983 alleging that their terminations were also motivated by racial discrimination. It further appears from the plaintiffs' motion, that the basis for their request to amend and for additional discovery stems from the contents of several newspaper articles published in June, 1993 in which several PHA Board members alleged that race was a significant factor in several personnel decisions made by the housing agency during the period in which it was being run by HUD.

Applying the factors enunciated above, this court first finds that an inordinate period of time has elapsed since the plaintiffs first filed this action in October, 1992 and that during that time evidence has been presented, numerous depositions have been taken and several appeals have been presented to the Third Circuit. Moreover, we are unable to locate nor have the plaintiffs provided us with any legal authority or precedent such as would support the admission into evidence at trial of the newspaper articles upon which plaintiffs evidently rely in support of their motion to amend. Finally, the plaintiffs have not offered this court any explanation as to why they could not have discovered that

their alleged terminations were also racially-motivated prior to June of this year. For these reasons, we believe that the proposed amendment is both untimely and would be futile. Plaintiffs' request for leave to amend is therefore denied.

**\*566** B. *Standards Governing Motions for Summary Judgment*

[6] Federal Rule of Civil Procedure 56 outlines the principles to be applied by the district courts in disposing of motions for summary judgment. Under subsection (c) of that rule:

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this manner, a summary judgment motion requires the court to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

[7] Generally speaking, the party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motions and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering such a motion, the court must view all of the facts in the light most favorable to and all reasonable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d

202 (1986); *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa.1991).

This does not, however, give the non-movant license to rest solely upon the allegations contained in his or her pleadings in defense of a summary judgment motion. Indeed, Fed.R.Civ.P. 56(e) provides:

> When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, while the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element of its case. *Celotex, supra,* 477 U.S. at 323–25, 106 S.Ct. at 2553; *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524 (3rd Cir.1990).

[8] Viewing the instant case in the light most favorable to the plaintiffs as non-movants, we note that in September, 1993, plaintiffs' counsel filed a "Suggestion of Mootness" with attachments in the Court of Appeals which clearly demonstrates that on September 15, 1993, PHA notified each of the plaintiffs that they had been formally appointed to the new "Site Manager" positions, effective September 10, 1993. By plaintiffs' own admission, they "believe these letters moot the issues involved in the within appeal, in that they remove all foreseeable possibility of danger to position of the plaintiffs from the prior action of the appellees." In light of this development, we find it impossible to reach any other conclusion but that these plaintiffs no longer have any of the claims which they raised in their amended complaint and that summary judgment must be entered in favor of the defendants on the basis of mootness.

C. *Standards Applicable to Motions for Sanctions*
Under Fed.R.Civ.P. 11,

> "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated ... The signature of an attorney or party constitutes a certificate by the signer that the **\*567** signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... *If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.*

(emphasis supplied)

**[9]** **[10]** **[11]** It is well-recognized that the central purpose of Rule 11 is to discourage the filing of pleadings, motions and other papers that are frivolous, legally unreasonable or without factual foundation. *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3rd Cir.1988) quoting *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986) and *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986). Rule 11, however, does not prohibit

merely intentional misconduct. Inexperience, incompetence, willfulness or deliberate choice may all contribute to a violation. *Bakker v. Grutman,* 942 F.2d 236, 240 (4th Cir.1991). The goal of Rule 11, therefore is not wholesale fee shifting but correction of litigation abuse. *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3rd Cir.1987).

**[12]** **[13]** **[14]** Although Rule 11 has not been consistently applied throughout the Nation, certain aspects of Rule 11 jurisprudence are clear. First, the Rule imposes an obligation upon counsel to stop, think, investigate and research before filing papers either to initiate a suit or to conduct the litigation. *Project 74 Allentown, Inc. v. Frost,* 143 F.R.D. 77, 82 (E.D.Pa.1992), *aff'd w/out opinion,* 998 F.2d 1004 (3rd Cir.1993). Second, Rule 11 can only be violated if the signing of the document in question was unreasonable under the circumstances. Although a court must avoid the use of hindsight to determine whether signing a document was reasonable under the circumstances, it is the objective reasonableness of the signing which must be evaluated, not the subjective intent or belief of the signer. *Id.,* citing, *inter alia, Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 289 (3rd Cir.1991), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). Finally, if a court finds that Rule 11 has been violated, the imposition of sanctions is mandatory. *Id.,* 143 F.R.D. at 83.

**[15]** In this case, the defendants moved for Rule 11 sanctions against the plaintiff Claude Ross for the signing of his affidavit in support of the plaintiffs' motion for preliminary injunction on the grounds that affidavit had no basis in fact or law. Two days of hearings were held in this matter on February 18 and March 9, 1993 at which both Mr. Ross and plaintiffs' counsel, Mr. Sugarman, testified as to what their beliefs were and what actions they took prior to the October, 1992 filing of the preliminary injunction motion. Although it appears that very little investigation was undertaken at that time into who the alleged "Rizzocrats" were or the purported political nexus between that so-called group and Messrs. Jolly and Smerconish and Ms. Whitney, we cannot say that this inaction rose to the level of having been unreasonable under the circumstances. Indeed, regardless of the eventual outcome of this case, the fears of Mr. Ross and the other plaintiffs were certainly real, albeit ultimately unjustified. What's more, we note that in its order affirming this Court's January 21, 1993 decision, the Third Circuit denied defendants' application for an award of attorney's fees. Accordingly and for all of the foregoing reasons, we decline to impose sanctions against

WESTLAW  © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Mr. Ross under Rule 11. The defendants' motion for same is therefore denied.

An appropriate order follows.

### ORDER

AND NOW, this 22nd day of October, 1993, upon consideration of the Motion of **\*568** Plaintiffs for Leave to Amend and For Discovery, and the Motions of the Defendants for Summary Judgment and For Sanctions Pursuant to Fed.R.Civ.P. 11, it is hereby ORDERED that: (1) the Plaintiffs' Motion for Leave to Amend and Discovery is DENIED; (2) the Defendants' Motion for Sanctions is DENIED; and (3) the Defendants' Motion for Summary Judgment is GRANTED and judgment in no amount is hereby entered in favor of the Defendants and against the Plaintiffs.

**All Citations**

151 F.R.D. 562, 28 Fed.R.Serv.3d 222

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

# Stiles v. Chesapeake Appalachia, LLC

United States District Court, M.D. Pennsylvania. |     July 29, 2011 |     Not Reported in Fed. Supp. |     2011 WL 13243761

2011 WL 13243761

2011 WL 13243761
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Carl STILES, Judy Armstrong, and
Angelina Fiorentino, Plaintiffs,
v.

CHESAPEAKE APPALACHIA, LLC; Chesapeake
Energy Corporation; Nomac Drilling, LLC;
Great Plains Oilfield Rental, L.L.C., and
Diamond Y Enterprise, Inc., Defendants,

CIVIL ACTION NO. 3:10-CV-2453
|
Signed 07/29/2011

**Attorneys and Law Firms**

Tate J. Kunkle, Napoli Bern Ripka & Associates LLP, Leslie Lewis, New York, NY, William S. Berman, Napoli Bern Ripka, LLP, Marlton, NJ, William J. Dubanevich, Parker Waichman LLP, Port Washington, NY, for Plaintiffs.

Anthony R. Holtzman, David R. Overstreet, K&L Gates LLP, Harrisburg, PA, for Defendants.

**MEMORANDUM**

A. Richard Caputo, United States District Judge

 *1  Presently before the Court is plaintiffs' motion to remand (Doc. 21). Plaintiffs ("Armstrong") argue the case should be remanded because defendants Great Plains and Diamond Y are not diverse parties under 28 U.S.C. § 1332, the Court's sole basis for subject-matter jurisdiction. Defendants ("Chesapeake") contend remand should not be granted because the amended complaint violates Federal Rule of Civil Procedure 15 and fails the *Hensgens* test for joinder of non-diverse defendants after removal under 28 U.S.C. § 1447. The Court does not agree with Chesapeake and will grant Armstrong's motion for remand for the reasons stated below.

**BACKGROUND**

Armstrong's amended complaint alleges the following.

At the times relevant to this suit, plaintiffs Carl Stiles, Angelina Fiorentino, and Judy Armstrong all resided at 479 Quicks Bend Road, Sugar Run, Pennsylvania, in Bradford County. Currently, plaintiffs Stiles and Armstrong reside in Northern Cambria, Pennsylvania, and plaintiff Fiorentino resides in Shippensburg, Pennsylvania. All three plaintiffs are citizens of Pennsylvania. Defendant Chesapeake Appalachia, LLC is a limited liability company formed in West Virginia. Defendant Chesapeake Energy Corporation ("CEC") is an Oklahoma corporation, headquartered and with its principal place of business in Oklahoma City, Oklahoma. Defendant Nomac Drilling, Inc., a subsidiary of CEC, is a Pennsylvania corporation with its principal place of business in Oklahoma City, Oklahoma. Defendants Great Plains Oilfield Rental, LLC and Diamond Y Enterprise, Inc. are both wholly owned subsidiaries of CEC with their principal places of business in Mt. Morris, PA.

In 2009 and continuing hereafter, defendants operated several natural gas wells and conducted drilling activities in Bradford County, Pennsylvania. These sites included Wells #831081, #831206, and #83205. These wells were all located within three (3) miles of Plaintiff's residence. At the times relevant to this action, Armstrong relied on a ground water well for drinking, bathing, cooking, washing, and other daily activities. Because of defendants drilling activities, methane, ethane, and other pollutants and industrial waste entered and contaminated the ground and aquifer near Armstrong's home and also contaminated the ground water well she relied on for her water supply. Armstrong claims improper drilling techniques and materials, such as well casings, poor planning, and insufficient training and supervision of staff and employees caused the contamination. As a result of this contamination Armstrong claims: the water supplies were contaminated; she was exposed to hazardous chemicals and substances; the value of her property went down; her quality of life diminished; she has suffered and will suffer future personal injuries; and she lives in fear of future medical problems.

Armstrong initially filed a complaint only against Defendants CA, CEC, and Nomac Drilling in the Court of Common Pleas of Bradford County, Pennsylvania. Defendants removed the case, on the ground that diversity jurisdiction over the suit, and filed a motion to dismiss on December 6, 2010. Armstrong then told Chesapeake she would be filing an amended complaint. Chesapeake sought and was granted thirty days to file its brief in support of its motion to dismiss. Chesapeake filed its brief on January 19, 2011 and Armstrong

Stiles v. Chesapeake Appalachia, LLC, Not Reported in Fed. Supp. (2011)

2011 WL 13243761

filed her amended complaint the next day. The amended complaint added plaintiffs Stiles and Fiorentino as well as non-diverse defendants Great Plains Oilfield Rental, LLC and Diamond Y Enterprise, Inc.

**\*2** The amended complaint contained claims for: the Hazardous Sites Cleanup Act (count I); Negligence (count II); Negligence Per Se (count III); Private Nuisance (count IV); Strict Liability (count V); Trespass (count VI); and Medical Monitoring Trust Funds (count VII). Armstrong also seeks punitive damages as well as compensatory damages for, among other things, emotional distress.

Chesapeake then filed a motion to strike and a motion to dismiss the amended complaint. (Doc. 17.) Armstrong followed with a motion to remand (Doc. 21), claiming there was no longer diversity jurisdiction because Great Plains and Diamond Y were non-diverse parties. Armstrong has moved for oral argument. The motions have been fully briefed, oral argument has been held, and the motions are ripe for review. Because the Court will grant the motion to remand, the other motions will be mooted.

## DISCUSSION

Armstrong contends the motion for remand should be granted because Diamond Y and Great Plains are non-diverse parties she joined in conformity with the Fed. R. Civ. P. 15. She further argues joinder is permissible under 28 U.S.C. § 1447(e). The Court agrees and will remand the case.

### I. Fed. R. Civ. P. 15

Armstrong has not violated Fed. R. Civ. P. 15. The twenty-one (21) day time period for amendment as a matter of course under 15(a)(1)(B) only started to run once Chesapeake's brief was filed on January 19.

Under Fed. R. Civ. P. 15(a)(1):

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

"In all other cases," Fed. R. Civ. P. 15(a)(2) states, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

Opposing the motion to remand, Chesapeake argues Armstrong's amended complaint was untimely under 15(a)(1)(B). The motion to dismiss was filed on December 6 but the amended complaint was not filed until January 20. However, Chesapeake's brief in support was not filed until January 19.

Fed. R. Civ. P. 7(b) states, "A request for a court order must be made by motion. The motion must: be in writing unless made during a hearing or trial; state with particularity the grounds for seeking the order; and state the relief sought." Under Local Rule 7.5, "Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion ... If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn."

There is something of a disconnect here. While Fed. R. Civ. P. 7(b) states the motion should "state with particularity the grounds for seeking the order," the LR 7.5 allows the party filing the motion to file a *separate* brief providing the grounds for the order. The question then is whether the "motion" for purposes of 15(a)(1)(B) means just the motion requesting the court order or the brief providing the grounds as well. To avoid possible tension between LR 7.5 and 7(b), the Court reads the word "motion" in 7(b) to refer to both the motion *and* the brief. Otherwise the Local Rules would appear to allow the filing of motions that did not comport with 7(b), since motions filed in this district seldom contain the grounds for seeking the order (Chesapeake's motions here being a good example). Further, reading 7(b) as Chesapeake proposes would encourage sharp practices. Parties would be caught between missing the deadline to file an amended complaint under 15(a)(1)(B) and blindly filing amendments which may or may not address the opposing parties arguments for dismissal.

**\*3** Looking again at the language of LR 7.5 further encourages the Court's viewing the brief in support as part of the motion. It states that, except in limited circumstances, a brief in support must be submitted within fourteen days of submitting the motion. Otherwise, the motion "shall be deemed to be withdrawn." Consequently, it is logical to view the brief as a prerequisite for the Court to countenance the motion—in accordance with 7(b)'s requirement that the

2011 WL 13243761

motion contain the order's grounds—since an unbriefed motion is automatically removed from the docket. The Court therefore finds the amended complaint comports with the strictures of 15(a)(1)(B) and will now review it under 28 U.S.C. § 1447(e).

## II. 28 U.S.C. § 1447(e)
The Court will allow joinder of Great Plains and Diamond Y and remand the suit to state court.

28 U.S.C. 1447(e) states: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 1447(e) grants substantial discretion to the district judge in deciding whether to permit joinder. *See, e.g., Massaro v. Bard Access Sys., Inc.,* 209 F.R.D. 363, 368 (E.D. Pa. 2002). While the Third Circuit has not adopted an approach to be used by the district court in applying 1447(e), a number of courts in this Circuit have endorsed an approach taken by the Fifth Circuit in *Hengsens v. Deere, Co.* 833 F.2d 1179 (5th Cir. 1987).

Under *Hengsens*, the court considers: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on th the equities. *Hengsens*, 833 F.2d at 1182. This framework is meant to "balance the defendant's interests in maintaining a federal forum with the competing interests of not having parallel lawsuits." *Id.* The Court will now review each factor in turn.

First, Chesapeake argues Great Plains and Diamond Y were joined solely to defeat federal jurisdiction. It contends they play no role in the operating the wells, and merely rent trucks, equipment, and provide minimal support to Chesapeake's operations. Armstrong counters that these companies played a much more significant role in the alleged events and were directly involved in the activities allegedly giving rise to Armstrong's injuries. While the extent of Great Plains' and Diamond Y's role in the events underlying the suit is unclear, the Court finds Armstrong did not join them just to defeat jurisdiction. Chesapeake admits they provided equipment and operational support, and were therefore, minimally, involved in the day to day activities at the wells.

Second, the Court does not find Armstrong has been dilatory in seeking amendment. While some time elapsed between the filings of the original and the amended complaints, the amended complaint was only filed a day after Chesapeake's brief in support of its motion to dismiss.

Third, the Court finds Armstrong could be significantly injured if amendment was not allowed. In that event, Armstrong would have to sue Great Plains and Diamond Y separately in state court. This would obviously present a significantly greater logistical and financial burden for Armstrong and her counsel.

Finally, weighing the equities, the Court finds remanding the case to state court would not be unfair to Chesapeake. Armstrong originally brought her complaint in state court. On the record before this Court, she appears to have acted thus far in good faith and in accordance with the court's rules. While Chesapeake would prefer to be in federal court, Armstrong prefers state court, and the decision is within the Court's discretion.

**\*4** Therefore, the Court will permit joinder of Great Plains and Diamond Y under 28 U.S.C. 1447(e).

## CONCLUSION

The Court will allow Armstrong to join Great Plains and Diamond Y and will remand the case to state court since these defendants are non-diverse. Armstrong's amendments were allowed under Fed. R. Civ. P. 15 and the Court will permit them under U.S.C. 1447(e).

An appropriate order follows.

## ORDER

**NOW**, this 29th day of July, 2011, **IT IS HEREBY ORDERED THAT** Plaintiffs' Motion to Remand (Doc. 21) is **GRANTED.** Defendants' Motion to Strike and Motion to Dismiss (Doc. 17) is **MOOT.** This case is **REMANDED** to the Court of Common Pleas of Bradford County, Pennsylvania.